May it please the Court, Judge Loken, Judge Smith, and Judge Grounder, my name is Andy Dunn. I'll be here on behalf of Damon O'Neil, counsel. Thank you for hearing Mr. O'Neil's case. He's been in prison a long time because of an illegal search warrant, a search warrant that was based upon very false information. All the evidence should have been suppressed and should not have been admitted at trial. Detective Canis in this case blatantly inserted false statements regarding a controlled buy in order to get a search warrant for the apartment where O'Neil was staying. There's a pretty good explanation in the government's brief warrant wasn't blatantly inserted false information. It seems to me, if you start with a gross exaggeration like that, I'm a little put off. Perfect, and I'll back it up right now. Your Honors, in the addendum, you'll see that it's blatantly false for these reasons. On page 103 of the addendum, when Detective Canis is talking about how this investigation began to Mr. O'Neil. I'm talking about the confidential informant said Aaron, but didn't give a surname. Exactly. He said Aaron, but it wasn't just Aaron once. He said, first he said O'Neil was bringing crack cocaine from Chicago to Davenport and Aaron was distributing it. Then Detective Canis had Libby, the confidential informant, call Aaron, and I'm using Aaron because that's the name, to set up this controlled buy. Then they went to the controlled buy and it was Aaron who did the controlled buy. Then when Aaron gets back to the car, and this is a recording, and this is on page 105 of the addendum, the officer is talking about after this controlled buy went, he goes, we made a recorded phone call to the subject. He knew as Aaron who was distributing and selling. Then when they get back in the car, when Libby gets back in the car, and this is on page 108 of the addendum, he tells Detective Canis, it was Aaron was the one he was met with. So that's at least what's the significance  You haven't solved the surname issue yet. The worst fact for your argument is that the warrant recited, and apparently it's not contested, that the buyer went back to the same apartment. That is contested because that's false. Because the buyer What do you mean? How do we know it's false? Because it's in the testimony of Detective Canis and it's in the search warrant. The buyer came out of the back of the apartment complex He went out the front door and went back to the apartment. That's what it said. That's not true. If you look at the Wait a minute. Who was there that establishes it's not true? Do we have the informant's testimony? No, we have Detective Canis' testimony that's in the appendix. Then when you look at his own attachment, it says right here, a short time later, surveillance observed a female black, later identified as Melissa Taylor, exit the rear of the apartment complex and cross the street. Surveillance observed Taylor, then after control by, surveillance observed Taylor entered the front door. And went to the apartment they suspected. Exactly. But it wasn't, it was Erin Taylor came from the back of the apartment, not from the front. So there's no evidence that there was drugs at the place. I can't believe, I mean, I guess you can argue this to a jury, but it's obvious to me the seller can go out the back door and back in the front door. The question is, if the seller came out of the apartment that they had reason to suspect was the venue for drug dealing. And it's known. The magistrate, the district court's analysis that the specific identity of which woman it was, the sister-in-law or the niece, didn't matter. It certainly matters. Because number one, she didn't come out of the apartment. She came out of the back of the apartment building. So where did she come from? Where did she come from? She didn't come from the apartment because it would have said. Erin came out of the apartment. OK. And you resolved what I suspected is that you don't have facts to controvert what I think the district judge thought was pretty critical. I certainly do. The court can read Detective Canis' testimony. I read all that. Well, then the court would see that Erin Barrett and the reason that he blatantly and falsely put Marissa Taylor's name in there is because that's how he gets a search warrant. And on page 104 of the appendix. She was distributing drugs for O'Neal and Taylor. There's no evidence that she was doing it for Taylor. If you look at Detective Canis' testimony. All we're talking about is probable cause to search that apartment. Yeah, but where's the probable cause that there was drugs in the apartment? There's none. There's not one iota that there's probable cause that that Erin came from that apartment. If that's your view of fact finding under the Fourth Amendment, we'll never agree on any case. Well, that's my agreement. That's what I'm going from the facts of the exact words of the attachment in his trial testimony. So the thing is, if you look at the other cases, when you put in an identified person, what's the key component in those cases? I don't think the word inference exists in your vocabulary. Well, it's not a fair inference that Erin came out of the front of the building apartment. She came out of some apartment. Otherwise... She could have come out of a car in the back. Exactly. She went back into the apartment that they wanted to search. Without drugs. Because she had drug money. She had buy money. $50 that they gave to Libby to buy from Erin. Didn't she have the buy money? I have no idea once they went... Isn't that what the informant told the officer? That they did a buy, of course, because he gave her $50. But then the search wasn't done until seven days later. So who knows that the $50 was there? She went across the street with drugs and she went back across the street with buy money. Into the apartment. Right. But that's not what the attachment and the trial testimony say. They say that they don't know where she came from. And then this is the key. If you look at Detective Candace's testimony on page 104 of the addendum, he's asked, why do you do a controlled buy? And he says, the main goal is to get a search warrant, either for the apartment or the house, to do the controlled buy out of, do the controlled buy out of, the controlled buy wasn't out of the apartment. That is where the supplier holds his stuff. So that would have been the car that your honor referred to, or the back of the building your honor referred to. If this court looks to other suppressing cases under these Franks cases, when they look at this, what's the key component? The drugs were in the apartment to begin with. The controlled buys were in the apartment. Okay. They're right in there. You might as well go on. I mean, I got that argument out of your brief. Okay. So with that, since this was blatantly false information and the testimony of Candace shows that during trial and in his attachment, all this evidence has to be, well, I guess when you look at the search warrant, there's never any connection to the apartment once you delete all the false information. And even the district court. What's your best authority for the entire paragraph had to be deleted? The Reinholz case. Okay. Okay. And the beauty of the Reinholz... Anything else? I don't think... I think Reinholz is gold. You say the district court violated the constitution in the way it distinguished Reinholz, but... I did. Okay. Because Reinholz... So that's your best case? Reinholz is golden in this case, and it will affirm what was done here. Because Reinholz, they refused to exchange the identity of the informant. The informant in that case was a pharmacist. And the search warrant affiant held him out as a reliable informant. And the court says, well, that's not true. It was a pharmacist that had no first-hand information. So Reinholz goes, no, we're not going to give that person a new name. We're going to delete all that information. Reinholz deletes all that information, rejects the government's argument to put in a dynafied person. Isn't that different, though, because there the purported informant hadn't actually observed anything that occurred in that paragraph. And here we had law enforcement actually observe a lot of what happened. Maybe a different person, but they observed what happened. True. And Reinholz, I believe that the pharmacist said that I sold a bunch of pseudoephedrine to the person. And so that would attend to, we know the case law that pseudoephedrine is used for meth, so that's a pretty strong thing. So that's cooperation there. And so in this case, then again, we have to believe that what Detective Canis says is true, based upon the fact that he's already lied, that it was Melissa Taylor doing this and not Aaron Barrett. And the beauty of Reinholz is, too, in Reinholz, the defendant... Why didn't what the district court did suffice, to take out the identity of the person, just say this cellar goes in, that's the apartment the cellar goes in, that's where the suspected transaction takes place, the officers witnessed that, that's sufficient for search? Not here because the controlled buy happened out on the street across from the apartment. So I think we have to look at this in context. Aaron Barrett comes from back of the house, comes from back of the apartment building, walks across the street, does a controlled buy, and then Aaron Barrett walks back in to the front of the building into the apartment. So there's no evidence that the 50 grams of crack ever came from the apartment. In the other cases, even in Reinholz's case, there were trash pulls showing that there was drugs in the house, and that's what eventually saved the warrant. If you look at the government's cases, when they talk about putting in an unidentified person, they were saying, well, it doesn't matter if you put in an unidentified person because it's the apartment or the residence you want to search. And why was that important? Because surveillance and controlled buys were actually done in the residence. We don't have that here. We don't have that connection, and that's the relevance, is that there's no evidence that there's ever drugs in the apartment. And the most evidence that is showed here, even by inference, is that $50 went back into that apartment, and a search warrant was conducted seven days later. When the court looks at Detective Caniz's testimony and sees that he knew it was Aaron Barrett, and he recklessly put in the other lady's name. If the court looks at page 114 and 115 of the appendix, the officer was asked, he goes, well, you applied for a search warrant for the apartment. And he goes, was Melissa Taylor first identified as the person who did the controlled buy from Libby? No. Was Miss Verrett? No. Who was it? And this is what the officer says. The CS, Libby, had informed me it was Aaron, but I was not sure who it was. We did not have a last name. I thought, possibly, that people do not give their real names, that they use nicknames only. That's why I put that there. That's quite a stretch to take Aaron, I don't believe you, that it could be the name, and put in Melissa Taylor. Two specifically different things. And by the way, in his search warrant attachment, Libby was believable. In the search warrant attachment, Libby is a person of truthful reputation, has no motivation to falsify information, has demonstrated truthfulness in the past, has not given false information in the past. So he's attesting Libby is true. So why wouldn't he believe that it was Aaron that was doing this when he was told on three or four occasions it was Aaron? It's a stretch to put in Melissa Taylor. The only reason he put in Melissa Taylor is because he wanted to get in the apartment, and he knew a magistrate would not issue a warrant to that apartment if Melissa Taylor's name wasn't in it, because some random person came from the back of a building, did a $50 crack buy, and went back into an apartment where there's no drugs. For those reasons, Your Honor, I would reserve my remaining time for rebuttal. Thank you, Mr. Dunn. Mr. Limbkuhl? Thank you, Judge. May it please the Court. The district court correctly denied each of Mr. O'Neill's claims of ineffective assistance of counsel in this case. I would like to discuss primarily the Franks issues, specifically the one relating to the identity of the female involved in the controlled buy. To obtain a Franks hearing on that issue in his criminal case, Mr. O'Neill would have had to show that the allegedly false information was necessary to the finding of probable cause. The district court in this case correctly held that O'Neill's counsel was not deficient because he could not have shown that that allegedly false material was necessary to the probable cause. As the district court observed, the alleged falsity in this case is narrow. It's related to the specific identity of the female involved in the controlled buy. So consistent with Franks, the district court asked, without the specific identity of that person, does the affidavit nonetheless establish probable cause? The government believes the district court was correct that it does, based on the facts that Judge Loken discussed with Mr. Dunn. Officers personally surveilled this controlled buy. The confidential informant made contact with someone near the residence. They observed a female exit the rear of the building, meet with the CI for a brief time, then go back through the front door of the building and enter the subject apartment. Based on those facts, and then of course the CI then met with officers, turned over the crack cocaine purchased during the controlled buy, those facts alone, without any information at all about the seller, established probable cause for the search warrant. The district court- Let me back up here now. Was there no suppression motion filed at trial? That's my understanding, Your Honor. That's okay. So on appeal, there was no Fourth Amendment issue. And is the ineffective assistance claim failure to move to suppress based entirely upon this textual analysis of the warrant affidavit? I believe that's right, Your Honor. The briefs don't really make that terribly clear. That's the only basis for ineffective assistance. So the ineffective assistance is defense counsel's failure to provide the same textual analysis of the warrant affidavit that's so vigorously argued to this court today. Am I correct in that? Well, I understand Mr. O'Neill's brief to raise some additional suppression arguments with respect to just that there was no probable cause for the search warrant. No, but how was the ... I mean, the district court rattles off the ... We've got multiple suppression claims separately stated, but on this ... There isn't an argument there was an ineffective assistance for failing to make a Frank's motion. So I assume that the back and forth in the district court was if you'd have made a motion to suppress, you would have accompanied that with a request for a Frank's hearing, am I right? Yes. My understanding of Mr. O'Neill's argument is that his lawyer was ... Did you do this in the district court? I did not handle this in the district court, Your Honor. The district court correctly analyzed this issue, the Frank's issue, with respect to the identity of the female involved in the controlled by, and specifically by reading the affidavit as if it just referred to an unidentified woman. Frank's requires only that the false material be set aside. The false material in this case, in the affidavit, the allegedly false material is limited to the specific identity of that female. The district court complied with Frank's by disregarding that information and then asking whether the remainder of the affidavit established probable cause. That analysis is consistent with how courts have addressed similar issues. I cited the Castro case from the Sixth Circuit in our brief. That was a case where a tip actually came from an anonymous tip, but then in the affidavit the officer said this information came from a confidential informant, which understandably those are two different things. Confidential informant would suggest that there may be reasons that law enforcement trusts this individual as opposed to an anonymous tip. In that Castro case, the Sixth Circuit said the district court properly struck the references to the confidential informant and then read the affidavit as if it referred to an anonymous source. I think the Castro approach is essentially what the district court did here. The allegedly false information is the specific name of this person involved in the by. We'll omit that and just read the affidavit as if it did not identify that person at all. I did want to discuss this court's decision in Reinholz. In Reinholz, this court affirmed the district court's decision to strike an entire paragraph from an affidavit, but it did so because that entire paragraph was false. Reinholz was a case where a pharmacist provided information to law enforcement that Mr. Reinholz had purchased iodine tablets. The search warrant affidavit in Reinholz, however, talked about how the officer had a confidential and reliable informant who provided information that Mr. Reinholz was involved in the use and distribution of methamphetamine. That was a far cry from the actual information the officer had, which is just that a pharmacist reported this guy had purchased iodine tablets. Reinholz also refused to add omitted information back into the affidavit. In that case, the government said, well, okay, if that information was false, then the court should have supplemented the affidavit with information that we did not put in the affidavit, that being that the pharmacist personally saw the defendant buy iodine tablets. This court in Reinholz refused to supplement the affidavit with that information, but the rationale is important in this case. In Reinholz, this court said it would not supplement the affidavit with that omitted information bolstered the probable cause in that case. It would have added probable cause facts to the affidavit that were not included in the first place. The district court's approach here was consistent with Reinholz. The district court did not need to strike an entire paragraph in this case because an entire paragraph was not false. The district court also did not add anything to the affidavit that bolstered probable cause. If anything, it detracted from probable cause in this case because it removed the connection that Melissa Taylor had to the residence by way of having the utilities in her name. I also wanted to address... Without Taylor's name being used, what do we have that ties drugs to Apartment 1? And if I understand what we're left with is an anonymous person leaving out of the back of the building, unspecific to which apartment, and then that person engaging in a drug sale and taking the drug money back to Apartment 1. You think taking the drug money back to Apartment 1 is sufficient by itself? By itself, I think so. I think it's a closer question, but I also think that the issuing magistrate could have made a reasonable inference that somebody who leaves from the rear of an apartment building meets with a confidential informant, sells that person drugs, then goes back in through another door of the same building and goes into this apartment. I think it would be a reasonable inference for the issuing judge to conclude that that person probably came from the same apartment to begin with. But even apart from that, I think... But isn't the relevant question whether it's ineffective assistance for trial counsel not to assume that what you just said is true, that the judge would, if the Franks hearing was requested, and everything we know today came out, that the court would say there's still probable cause because the inferences out the back door with drugs in the front door would buy money. Right. So is it incompetent for a lawyer to decide, that's a loser, I'm not going to make that motion. Right. Exactly, Your Honor. You know, this is a case where, when we're in the ineffective assistance context, we're not on direct appeal. The question is, if the lawyer was ineffective, the defendant needs to show that the suppression issue would have ultimately prevailed. And specifically on a Franks, in the Franks context, he needs to show that a Franks hearing would have established that some information that was necessary to the probable cause finding was false and would need to be stricken. That showing has not been made in this case, and the district court correctly reached that conclusion. I also wanted to touch on Mr. O'Neill's claim that it was somehow incorrect for the district court to read the affidavit with an unidentified female. Mr. Dunn has suggested in his brief, and I think again here today, that the district court should not have done that because Detective Canis, in fact, knew that this female was Erin Verrett and not Melissa Taylor. The record does not support that claim. Mr. Dunn cited some of Detective Canis' trial testimony. Detective Canis testified point blank at trial that he did not know definitively who this  He testified that the CI identified this woman as Erin. He testified he did not have a last name. He also testified, though, that he knew that Melissa Taylor was the lessee on the apartment. In the affidavit, he knew that Melissa Taylor had utilities in her name. I think at most what the record establishes is that Detective Canis did not know who this woman was. As the district court found, this is at page five of the Adenum, Detective Canis did not personally know whether the woman was Erin Verrett or Melissa Taylor. In those circumstances, the government believes there was nothing improper about the district court's approach of reading the affidavit as if it referred to an unidentified woman. Is there anything in the 2255 record from the defense counsel on this issue? He did submit an affidavit. Did it disclose whether prior to trial he knew that Erin was the niece? I think. Was a relative of. Yeah, there's a police report in the record. I know that subsequent to executing the search warrant, officers discovered that the female involved in the control by was Erin Verrett. They did that by. She was present at the search. Right. Yes. And so do we know that whether counsel knew her identity, her real identity? Prior to trial. She was a relative. I mean, it strongly confirms that she at least that she went into the went into the apartment and increases the inference. She came out of the apartment with their drugs to sell and if counsel knew all that, that's even a stronger reason why it was an ineffective assistance. Yes. Your Honor. I think. So do we know that from the record? I don't know if we know that definitively from the record. I mean, Miss Verrett testified at trial as to Mr. O'Neill's activities and the fact that she was assisting him with his distribution of crack cocaine. So I think it's reasonable, I guess, to presume that defense counsel knew Miss Verrett's identity and her relationship to the defendant as this case was proceeding in the district court. Would that testimony have come out even if there had been a suppression granted? If the search warrant evidence was suppressed? I mean, you know, suppression issues don't end with the start of trial. They persist and can be revisited. Right. In trial. So it sounds like the trial testimony confirmed sort of retroactive probable cause, if you will. Yes. I think it certainly confirmed the probable cause that they had for the search warrant in the first place. I wanted to touch briefly, Mr. O'Neill raises a second Frank's issue in his brief. This one relates to Detective Canis's alleged failure to disclose information about the confidential informant. Mr. O'Neill asserts in his brief that the confidential informant had been arrested and was helping law enforcement to avoid the consequences of his own criminal conduct. I would note that the cited portions of the record do not support that claim. They show at most that law enforcement identified the confidential informant via some surveillance activities and then utilized him to arrange a controlled buy. That kind of sparse allegation would not be sufficient to make the substantial preliminary showing that would be needed for a Frank's hearing. So Mr. O'Neill's counsel was not deficient for failing to seek one. I would also note that the confidential informant's general credibility was not material to probable cause in this case. This court has consistently held that a confidential informant's credibility is not material to probable cause when law enforcement has already corroborated the informant's information. In this case, the officers personally observed the controlled buy. The informant then immediately met with officers and turned over the drugs purchased during that buy. In those circumstances, in light of the police corroboration of the buy, the informant's general credibility was not material to probable cause. And that's supported by this court's decisions in Rivera and Carnahan, which are cited in our brief. If there are no additional questions on any of the other issues, the government would rely on the brief and ask that the district court be affirmed. See no additional questions. Thank you Mr. O'Neill. Thank you. Mr. Dunn. Your Honor, in this case, if the detective didn't know who did it, why did he specifically put down Melissa Taylor? At the bare minimum, that's extreme recklessness to put her down if he didn't know. And to put in an unidentified woman replacement like the district court wanted to do, that's false. They knew who it was. It was either Erin Verrett or Melissa Taylor. You can't make up somebody. You can't put in false information because you can't put an unidentified woman because they knew it was Erin. The officer could have put Erin in there. Erin, last name unknown, did this. He didn't do it. He puts Melissa Taylor so he could get a search warrant for that apartment, just like his trial testimony says. And the government cites the Castro case. If the court can rely on that, I don't think the court can rely on that for the government in this case because in that case, the defendant didn't even argue that there wouldn't be probable cause if they changed the name. On page 236, the defendant does not argue that probable cause was lacking if the district court's examination of the affidavit, as though the tip came through an anonymous source, was proper. In any event, there's probable cause because the guy left the house, they stopped him, he had heroin and cash on him and in the car. So of course they're going to look into his house. So the facts in that case bode well for us. Reinholz bodes well for us. I'd ask the court, suppress all the evidence and send this back for retrial with none of the evidence that was found in that apartment because of this very false statement. Now, wait a minute. How can we suppress the evidence when the issue is ineffective assistance of counsel? Because through case law, a meritorious suppression issue would be the cause and prejudice through ineffective assistance of counsel and we cited those cases, I believe, in my brief and in my reply brief. That's my gateway. Well, yeah, but I don't understand. How can we conclude that counsel was incompetent without getting counsel explanation of his strategy and tactics? Because on this record... What case does that? On a specific Franks issue, on a meritorious claim? Any issue. The Franks issue, I.E. on a Franks is why didn't you move for... Why didn't you bring the motion? My time is up. May I answer? Yes. Okay. The case law is clear. If counsel fails to follow through with a meritorious claim, he's ineffective and there's no trial strategy for that. There's no trial strategy not to do the Franks issue in this case. There's nothing that we need to hear from him because it's clear because it's false information. He may say, I had information to know that the motion would fail or to convince me that the motion would fail. And then that would be unreasonable trial strategy because the record here is clear that there was a lie, that it was a lie or recklessness. So it's a meritorious Fourth Amendment claim. Once the court looks at his trial testimony and the affidavit, how specific he is and how he wanted Melissa Taylor to be this unidentified person. Thank you, your honors. Thank you, Mr. Dunn. The court wishes to note that your representation today for the appellant is under the Criminal Justice Act and the court thanks you for your willingness to serve in that capacity. Thank you, your honor.